JOHN F. L. HEBB  (SBN 108391)
LAW OFFICES OF JOHN F. L. HEBB
1541 Ocean Avenue, Suite 200
Santa Monica, CA  90401
TEL:  310/393-3077, FAX:  310/496-0456
*JOHNFLHEBB@aol.com*
*Pro Hac Vice motion filed and pending*

ROBERT H. POWSNER  (SBN 24386)
LAW OFFICES OF ROBERT H. POWSNER
11315 Shoreline Street, Suite C, P.O. Box 1327
Point Reyes Station, CA 94956
TEL:  415/663-1035, FAX:  415/663-1450
*Powsner@aol.com*
*Pro Hac Vice motion pending*

AVRUM  J. ROSEN   (AJR4016)
FRED S. KANTROW   (FK3499)
LAW OFFICES OF AVRUM J. ROSEN
38 New Street, Huntington, New York 11743-3327
Tel: 631-423-8527, Fax: 631-423-4536
*FKantrow@AvrumRosenLaw.com*

Attorneys for Respondent
[Plaintiff in Arbitration], and
Cross-Petitioner
PAC PACIFIC GROUP INT'L,
INC. OF USA ("PPGI")

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NGC NETWORK ASIA, LLC ["NGCA"],** | **USDC CASE NO. 1:07-CV-2855** |
| **Petitioner,** | **On Removal from NY Supreme Ct. No. 600912/07** |
| **vs.** | **[Amer. Arb'n Assn.  No. 50 181 T 00079 07]** |
| **PAC PACIFIC GROUP INT'L, INC. OF USA ["PPGI"],** | **MEMORANDUM OF LAW** |
| **Respondent.** | **IN OPPOSITION TO** |
| ======================= | **1. PETITION TO STAY ARBITRATION;** |

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

1

**AMERICAN ARBITRATION ASSOCIATION**

_**ARBITRATION IN THE MATTER OF**_:

**PAC PACIFIC GROUP INT'L, INC. OF USA ["PPGI"],**

        **Plaintiff**

**vs.**

**NGC NETWORK ASIA, LLC ["NGCA"],**

        **Defendant**

**AND IN SUPPORT OF**

**2. CROSS-PETITION TO COMPEL ARBITRATION; AND**

**3. REQUEST FOR THRESHOLD HEARING**

**ALL UNDER THE FEDERAL ARBITRATION ACT, 9 USC 1, et seq.**

Respondent PAC PACIFIC GROUP INT'L, INC. OF USA ["PPGI"] here**b**y

**submits its Memorandum of Law in opposition to**

 **(1)** the petition to stay arbitration brought by NGC NETWORK ASIA, LLC ["NGCA"] in New York Supreme Court, and removed by PPGI to this court under diversity jurisdiction and the Federal Arbitration Act;

**and in support of**

**(2)** PPGI's cross-petition to compel arbitration under the Federal Arbitration Act; and

**(3)** PPGI's request for a threshold hearing under the Federal Arbitration Act ["FAA"] as to both the petition and cross-petition to determine whether the FAA applies to the parties' arbitration agreement at issue, and if so whether the basis for NGCA's petition and PPGI's opposition

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

involve issues which under the FAA are exclusively for the arbitrator to decide, and the Court's

role thus limited to directing the parties to immediately proceed to their arbitration pending before

the American Arbitration Association, or other mutually agreed arbitral entity.

# I . Procedural Preface.

Respondent PAC PACIFIC GROUP INT'L, INC. OF USA ["PPGI"] understands the

following to be the procedural posture of this removed case under the Federal Arbitration Act

["FAA"], 9 USC 2, 4 and 6, and to the extent respondent misconstrues that procedure respectfully

requests that the present papers be accepted in the interests of justice and decision on the merits,

under Fed. R. Civ. P. 55(c), as relief from any default, or otherwise.

Respondent filed the following pleading on 6/15/07:

1.  RESPONSE TO PETITION TO STAY ARBITRATION;

2.  CROSS-PETITION TO COMPEL ARBITRATION; AND

3.  REQUEST FOR THRESHOLD HEARING UNDER THE FEDERAL

ARBITRATION ACT.

Petitioner NGCA emailed its moving papers as to its request for a hearing in the federal

court, pursuant to its letter request to the Court for a hearing as required under the Court's

Individual Practices, to PPGI on 6/25/07.  After electronic service, per Fed. R. Civ. P.  6 and three

days added per Fed. R. Civ. P.  5(b)(2)(D), SDNY Local Rule 6.1(b) provisions result in a motion

opposition in this instance being due Friday 7/13/07.

After removal from state court, there was no motion or hearing pending.

The unilaterally requested Order to Show Cause ["OSC"] was a calendaring order granted

ex parte, without notice, based on a petition to stay arbitration filed 3/21/07.  That calendaring

order was served pursuant to an extraordinary undated OSC that "deemed sufficient service" on

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER
FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

Respondent  PPGI to be overnight delivery  of the petition, the undated OSC and additional papers to PPGI's counsel in California by 3/26/07,  and directed that PPGI's opposition papers be filed in NY state court within 14 days of  that "deemed sufficient service", namely by 4/9/07.

After removal that unilateral ex parte scheduling order obviously had to fall by the wayside, as the state court, upon receiving the PPGI's duly filed removal notice, lost all jurisdiction.

Further, by virtue of respondent PPGI raising the FAA in its answer and defense, and in its cross-petition, and in its request for an FAA hearing, the matter was then governed by both the substantive and procedural provisions of the federal act that applied, and those provisions, as recited below, call for a motion proceeding, and a summary address of the threshold question of whether the entire matter must be forthwith directed to an arbitrator's determination of the merits. FAA sec. 4, <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u> ["<u>Moses H. Cone</u>" or "<u>Moses</u>"] (1983) 460 US 1, 40-41 and fn. 27 ["Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible…. [§ 4] call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues…. Section 6 further provides that a request for relief under either § 3 or § 4 is to be treated procedurally as a motion."]

NGCA's citation to <u>Nasso v. Seagal</u> ["<u>Nasso</u>"] (EDNY 2003) 263 FSupp2d 596, referring to orders of state courts carrying over to federal, involves adjudications, not removal-superseded pending proceedings and procedural calendaring matters [<u>Granny Goose</u>, per <u>Nasso</u>, below].

NGCA's own cited <u>Nasso</u> makes clear the US Supreme Court's emphatic point that post-removal, it is federal procedure that controls:

Nasso's reliance on state procedural rules as a basis for refusing to review the September Order is misplaced because federal procedural rules govern an action after removal. *See, e.g.,* <u>Granny Goose Foods, Inc.</u>*,* 415 U.S. at 437,  ["<u>Granny Goose</u>"] ("[O]nce a case has

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT …**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."); Resolution Trust Corp., 958 F.2d at 1316 ("Federal procedure governs the enforcement of a prior state court order in a case removed to federal court."); Preaseau, 591 F.2d at 79 ("[T]he federal rules apply after removal.") (internal quotation marks omitted).

…

While the fact that the defendants may choose to remove an action to another forum with different procedural rules may create an opportunity for forum shopping, the Supreme Court has long held that federal procedural rules govern even where state substantive law applies. See generally Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Nasso, 263 FSupp2d at 608-609 (emphasis added).

Moreover, NGCA's request for a hearing in federal court on its petition to stay arbitration involved new matter over and above its state court ex parte request for an order to show cause, and so for that reason alone the request in federal court also constitutes new moving papers [rather than being NGCA's  purported 'reply' to  PPGI's "Response to Petition to Stay Arbitration"] -- to which PPGI would naturally be entitled to an opposition filing.   SDNY Local Rule 6.1(b).

PPGI's pleading "Response to Petition to Stay Arbitration" answered, pursuant to Fed. R. Civ. P.  81(c), what was functionally NGCA's state court initiating complaint [namely, NGCA's pleading "Petition to Stay Arbitration"].

**Rule 81.** Applicability in General

(a) To What Proceedings Applicable.
....
**(3) In proceedings under Title 9, U.S.C., relating to arbitration**, or under the Act of

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

May 20, 1926, ch. 347, § 9 (44 Stat. 585), U.S.C., Title 45, § 159, relating to boards of arbitration of railway labor disputes, **these rules apply only to the extent that matters of procedure are not provided for in those statutes.**

…

**(c) Removed Actions**. **These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal**. Repleading is not necessary unless the court so orders. **In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules** within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest."

Fed. R. Civ. P. 81 (emphasis added).

Fed. R. Civ. P. 7 provides:

**(a) Pleadings.** There **shall be a complaint and an answer**; a reply to a counterclaim denominated as such; **an answer to a cross-claim, if the answer contains a cross-claim**; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. **No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.**

**(b) Motions and Other Papers.**

**(1) An application to the court for an order shall be by motion which**, unless made during a hearing or trial, shall be made in writing, **shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.**

Fed. R. Civ. P. 7 (emphasis added).

FAA, 9 USC 6 (Application heard as motion) provides:

Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

That NGCA's own cited Nasso makes clear the US Supreme Court's emphatic point in

Granny Goose that post-removal, it is federal procedure that controls is all the more key in light of

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL ARBITRATION ACT …**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

1  the application of the spirit and letter of the FAA.

2      The FAA was not addressed or otherwise raised at any point in the momentary state

3  proceeding.

4      After removal PPGI answered NGCA's petition, and had also in its pleadings requested a

5  threshold motion hearing under the FAA.  But before PPGI had submitted its written letter request

6  for same pursuant to the Individual Practices of the Hon. Paul Crotty, NGCA by such a letter itself

7  requested that hearing.

8      NGCA's letter recited its petition, PPGI's  cross-petition and  PPGI's hearing request, and

9  PPGI did not oppose such because it understands the hearing to include the relevant required

10 threshold FAA determination that it was preparing its own letter request for.  As a precaution,

11 PPGI requests notification if otherwise, so that it might proceed with its originally intended letter

12 request for the appropriate FAA hearing.

13     Further, while PPGI's understanding is that the merits of the underlying statute of

14 limitations issues not properly yet before the court (and, unless it was somehow determined the

15 FAA did not apply, never will be), and so a memo of law on those merits would ordinarily not be

16 submitted at this stage, PPGI is nonetheless, as a precautionary measure given NGCA's moving

17 papers in this Court, submitting both a memo of law on the FAA issue and the underlying merits.

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

# II.  <u>FAA:  Under the FAA, this matter should be directed forthwith to the parties' provisionally initiated American Arbitration proceeding.</u>

**1.** Long-established federal law at the New York Southern District and Second Circuit levels is in direct, apparently absolute, and certainly controlling, accord with FAA dictates on the arbitrator's presumed exclusive jurisdiction of statute of limitations and related defenses absent the parties' express provisions otherwise:

*(1)* <u>Sears Roebuck v. Glenwal Co.</u> (1970) 325 FSupp 86:

Thus, the first matter to be considered is Sears' motion to remand.  Sears contends that Glenwal's demand for arbitration, which stated it was made pursuant to section 7503(c) of the New York Civil Practice Law and Rules, FN1 initiated the proceeding and thereby constituted Glenwal the plaintiff or petitioner in the state court proceeding, and consequently it was not a 'defendant' entitled to remove an action under 28 U.S.C., section 1441(a).  Sears further contends that by giving the notice pursuant to New York law, and by entering into a contract which provides it is to be governed by New York law, Glenwal elected to exclude federal jurisdiction.  Finally, Sears urges this case is not within the Federal Arbitration Act,FN2 since the contract does not involve commerce.  These contentions are without substance.

[W]hether tested by federal or New York law, it is clear that Sears and not Glenwal was the petitioner or plaintiff in the New York proceeding, and that Glenwal, as the respondent or

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2nd FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

'defendant,' properly filed its petition for removal.

...

Nor did Glenwal's description of the service of its demand for arbitration as pursuant to section 7503(c) of the Civil Practice Law and Rules constitute a waiver of federal jurisdiction.  Glenwal merely used the locally provided means for attempting to bring the matter to arbitration before resorting to a court.

Id., at 88-89 (emphasis added).

[S]ears' contention that the transaction does not involve commerce flies in the face of reality.  The contract, involving millions, was for the construction of a large shopping center.  The affidavit submitted on this application puts it beyond question *90 that material for the job was shipped in from other states in great volume; that equipment was brought in from New Jersey, and workers travelled from Hawthorne, New Jersey, the principal and home office of Glenwal, to the job site at Nanuet, New York.  It is abundantly established that the men were working in commerce, that goods were being shipped in interstate commerce, and that the activities under the contract affected commerce within the meaning of section 1 of the Arbitration Act.  A clear case is made out of a contract evidencing a transaction involving commerce.

...

Accordingly, Sears' motion to remand is denied; its motion to stay arbitration is denied, and Glenwal's cross-motion to compel arbitration is granted in accordance with the disposition made herein.

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

Id., at 89-91.

*(2)* The Second Circuit in Sears Roebuck v. Glenwal Co. (1971) 442 F2d 1350, endorsed this absolute position without reservation:

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

PER CURIAM: In open court the order of October 6, 1970 is affirmed upon the opinion of Judge Weinfeld in the United States District Court for the Southern District of New York, dated July 22, 1970, and reported at 325 F.Supp. 86 (S.D.N.Y.1970).

Id.

*(3)*  Recent U.S. Supreme Court cases, including for example the 2002 Howsam case, all the more dictate that in the instant arbitration any statute of limitations issue, or anything similar, must be decided by the arbitrator alone.  See item "2" next below.

**2.**  The New York Court of Appeals is in complete unequivocal accord, Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp. (2005) 793 NYS2d 831 ["Diamond Waterproofing"] *[citing, quite significantly, the 2002 leading U.S. Supreme Court case of Howsam, as well as that Court's earlier seminal Moses H. Cone Mem. Hospital case, on the point at issue; and distinguishing very clearly the New York Luckie case as involving different language from the PPGI  arbitration provisions* *]*:

On this appeal, the issues presented are whether the Federal Arbitration Act (9 USC §1 et seq.  [FAA]) governs the parties' contract dispute and, if so, whether the question as to the timeliness of the subject arbitration demand is an issue for the arbitrator or the courts.   We

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ⁿᵈ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

conclude that the FAA is applicable here as the contract had an effect on interstate

commerce.    We further conclude that the timeliness question and all other related questions

are for the arbitrator to determine because the contract's choice of law provision does not

provide that New York law shall govern the enforcement of the parties' agreement.

Id., at 832 (emph. added).

...

The [Appellate Division] concluded therefore that under the FAA the timeliness issue was

one for the arbitrator, not the courts.    We granted Diamond Systems' motion for leave to

appeal, and now affirm.

Id., at 833.

...

We turn next to the question whether the timeliness of the arbitration demand should be

resolved by the arbitrators or the courts.    The "presumption is that the arbitrator should

decide 'allegation[s] of waiver, delay, or a like defense to arbitrability' " (see Howsam v.

Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 [2002],

quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.Ct.

927, 74 L.Ed.2d 765 [1983] ).    Questions concerning " **'whether prerequisites such as**

**time limits, notice, laches, estoppel, and other conditions precedent to an obligation to**

**arbitrate have been met, are [generally] for the arbitrators to decide'** " (id. at 85, 103

S.Ct. 927 [citation omitted] ).

However, in recognition of the FAA policy that private arbitration agreements be enforced

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

11

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

according to their terms (see Dean  Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 [1985] ), an exception to this rule exists where parties explicitly agree to leave timeliness issues to the court (see <u>Matter of Smith Barney, Harris Upham &Co. v. Luckie</u>, 85 N.Y.2d 193, 201, 623 N.Y.S.2d 800, 647 N.E.2d 1308 [1995], cert denied sub nom.  Manhard v. Merrill Lynch, Pierce, Fenner &Smith, Inc., 516 U.S. 811, 116 S.Ct. 59, 133 L.Ed.2d 23 [1995];  see also <u>Howsam</u>, 537 U.S. at 85, 123 S.Ct. 588). Contracting "parties are at liberty to include a choice of law provision in their agreement" expressing an intention to have the courts determine statute of limitations issues (see Luckie, 85 N.Y.2d at 201, 623 N.Y.S.2d 800, 647 N.E.2d 1308;  see also <u>Matter of Smith Barney Shearson v. Sacharow</u>, 91 N.Y.2d 39, 47-49, 666 N.Y.S.2d 990, 689 N.E.2d 884 [1997] ).

It is well settled that where "parties broadly agree[ ] to arbitrate 'any controversy' " arising from their contracts, they may-as with any contract-add qualifications to that clause by providing that New York law will govern the agreement and its enforcement (<u>Luckie</u>, 85 N.Y.2d at 202, 623 N.Y.S.2d 800, 647 N.E.2d 1308).   A choice of law provision, which states that New York law shall govern both "the agreement ***and its enforcement***,"* adopts as "binding New York's rule that threshold Statute of Limitations questions are for the courts" (id.).   <u>In the absence of more critical language concerning enforcement, however, all controversies, including issues of timeliness, are subjects for arbitration</u> (see id.).

Here, Diamond Systems and Liberty agreed to submit "[a]ny controversy or Claim arising out of or related to the Contract" for arbitration.   Their choice of law provision provides only that "[t]he Contract shall be governed by the law of the place where the Project is located."   The parties did not express an intent to have New York law govern their

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

agreement's enforcement.   Therefore, the timeliness issue should be determined by the arbitrator.


*Id., at 833-835 (*emphasis to **and its enforcement** in original; other emphasis added*).

---

Diamond Waterproofing  is the subject of the lead note by David Siegel  in New York State Law Digest no. 545,  May 2005:

FEDERAL ARBITRATION ACT GOVERNS TRANSACTIONS "INVOLVING" INTERSTATE COMMERCE

The federal and state arbitration acts are the same in many particulars.  The Federal Arbitration Act is in Chapter 1 of Title 9 of the United States Code.  The state act is in Article 75 in New York's CPLR.  Because of the overall sameness, only infrequently does it make a difference whether it's the federal or state act that gets applied to a given issue arising in the arbitration context. …
On yet another fundamental, there's a difference: who decides a statute of limitations issue? …  Under the New York act, the court does; under the federal act, the arbitrator does.  It's one of the major matters on which the two acts differ. …

In a recent Court of Appeals decision, the bottom line was that the federal act was found applicable and the timeliness issue was therefore for the arbitrator to determine.  So held Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, .... N.Y.S.2d .... (March 24, 2005)….

There's another important issue to attend to in Diamond.  We give it its own caption and treatment:

CHOICE OF LAW CLAUSE MUST REFER TO "ENFORCEMENT" SPECIFICALLY IN ORDER TO VARY WHO DECIDES TIME ISSUES ARBITRATION CASES

[D]oesn't the choice of law instruction - which instructs to apply New York law (as the place of the project's location) - alter that, and require that New York law govern, after all?

The Court says no.  It says that the parties can indeed, with a choice of law clause, supersede the procedural instructions of the arbitration act that is otherwise applicable in the case - even as to statute of limitations issues (citing its 1995 Luckie decision) - but that in order to do that the parties must call for the application of state law not just to the contract generally, but to its "enforcement" specifically.  It's the "enforcement" language

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

that mandates recourse to state law for such procedural incidents as the statute of limitations, rules the Court, and these parties did not, with "enforcement" or any other equivalent language, "express an intent to have New York law govern their agreement's enforcement".  Ergo, in point of the timeliness issue, the federal act did not get superseded by New York state law, and the issue was still left to the arbitrator.

Siegel, New York State Law Digest no. 545,  May 2005.


The Second Circuit is in accord, and similarly distinguishes Luckie, in Shaw Group Inc. v. Triplefine Intern. Corp. ["Shaw" or "Triplefine"] (2003)  322 F.3d 115:


First, the agreement plainly states the parties' intent to submit "[a]ll disputes ... concerning or arising out of" the Representation Agreement to arbitration. In PaineWebber Inc. v. Bybyk, we held that even absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of "any and all" controversies reflects such a "broad grant of power to the arbitrators" as to evidence the parties' clear "inten[t] to arbitrate issues of arbitrability." Id. at 1199-1200. Citing approvingly to PaineWebber, the New York Court of Appeals reached the same conclusion in Smith Barney Shearson Inc. v. Sacharow, holding that language providing for "**[a]ny controversy**" between the parties to be "settled by arbitration," was sufficiently "plain and sweeping" to indicate an intent to have arbitrability decided by the arbitrators, 91 N.Y.2d at 43, 46, 666 N.Y.S.2d at 991, 994, 689 N.E.2d 884.

First, the plain language of paragraph 15 does not evidence an intent to incorporate New York arbitration law into the parties' agreement. In Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 60-64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the Supreme Court expressly ruled that **the mere inclusion of a choice-of-law provision in an arbitration provision does not thereby incorporate state arbitration law**. Accord National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 134-35 (2d Cir.1996). To the extent the New York Court of Appeals suggested otherwise in Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 202, 623 N.Y.S.2d 800, 805, 647 N.E.2d 1308 (1995), we observed in PaineWebber Inc. v. Bybyk, 81 F.3d at 1200, that Luckie has been seriously undermined by Mastrobuono. Indeed, since Mastrobuono, the New York Court of Appeals has limited Luckie to its specific facts, which notably included a choice-of-law provision applicable to the "enforcement" as well as the construction of the contract. See Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d at 48, 666 N.Y.S.2d at 995, 689 N.E.2d 884. We need not here decide whether to adopt this effort to reconcile Mastrobuono and Luckie. Cf. Coleman & Co. Securities, Inc. v. Giaquinto Family Trust, No. 00 Civ. 1632, 2000 WL 1683450, at *3 (S.D.N.Y. Nov.9, 2000) (holding that provision for "agreement and its enforcement" to be governed by New York law did not evidence parties' intent to be bound by New York arbitration law). It suffices to note that paragraph 15 of the Representation Agreement nowhere provides for New York law to govern the "enforcement" of the parties' contract. It invokes New York law only to assist in

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

construing the agreement and the parties' rights and obligations thereunder, subjects for state contract, not arbitration, law.

Second, the fact that paragraph 15 and paragraph 16 both contain choice-of-law clauses does not incorporate New York arbitration law into the parties' agreement. Those district court cases cited to us by appellees containing dual choice-of-law clauses are easily distinguishable. For example, in Insurance Co. of North America v. ABB Power Generation, Inc., 925 F.Supp. 1053, 1057 (S.D.N.Y.1996), the parties provided for California law to govern the construction of their contract but for their agreement to arbitrate to be "enforceable under the prevailing arbitration laws of the State of New York." (emphasis added [by the Triplefine court]).

Triplefine , 322 F.3d 115, 124 (emphasis original as noted, and added).

[Triplefine also supports the point made in connection with Sears v Glenwal, supra: PPGI's original notice of intent to arbitrate was pursuant to the parties' agreement; CPLR procedures are not a requirement for PPGI.  See the plain language of CPLR 7502(b) and 7503(c), Seigel's New York Practice sections 592 and 593, and, e.g., Triplefine International (2003, CA2) 322 F3d 115 (citing, again, Mastrobuono).  PPGI's successful, merely elective, use of the CPLR procedure to prompt again a still resisting contractual arbitration party to arbitrate or bear the burden of initiating litigation (and under this elective procedure, to initiate litigation within 20 days if that party is not to be forever foreclosed from raising the statute of limitations or other arbitrability defenses), is consistent with Siegel's analysis of additional available options described in the cited sections of his treatise.]

   In our case, one key distinction separates PPGI contract from NGCA's cited Coleman case. Coleman, and the case it relied on, are very clear that both contained a major component missing in our case and the cases PPGI relies on:: in Coleman and its supporting case, there were two choice of law provisions in the contracts in issue, one 'general' choice of law provision as to the contract as a whole, then a *separate* choice of law provision in the arbitration clause -- leading

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ⁿᵈ FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

those courts to conclude that the parties there must have 'intended' [as a matter of contract interpretation] that the arbitration clause's separate invocation of New York law at that point was meant to employ New York arbitration law [such does make some sense; however, the PPGI contract has no general choice of law provision, so the choice of law provision coming only in the PPGI contract's arbitration provision must be understood to function as a 'general' choice of law provision (as how else would the applicable law be determined in such a clearly multi-jurisdiction context?).

This interpretation is completely consistent with such U.S. Supreme Court cases of Mastrobuono, Moses, and Howsam, and other case law specifying that restricting the arbitrator's authority as to issues such as timeliness must be *very explicit* [all ambiguities in favor of arbitrator being the decider; etc.], which our contractual language hardly is on a key issue, timeliness, that that FAA case law resoundingly states is 'presumptively' for the arbitrator, with all ambiguities resolved in favor of arbitrator determination and all interpretations to be liberal in favor of arbitration.

Equally inportant, NGCA cites Coleman as its key case:
This is not even a New York court interpreting New York law; it is a 2000 federal district court case, in an unpublished opinion at that, that the later highest-New-York-court 2005 key controlling case of Diamond Waterproofing, cited by PPGI, did not even deign to refer to.


NGCA's cited Bell v. Cendant Corp. 293 F.3d 563 (2002) is readily distinguishable, as there the issue was whether if one of two agreements the parties entered into had an arbitration provision, but the other did not, could the arbitration of a dispute under the arbitration-less agreement be required by virtue of the first agreement.  This situation involves a classic case of "arbitrability" and whether the arbitrator could decide such, since there was a real question whether the parties under the second agreement had agreed to arbitrate.  It did not involve whether, as in our case where the parties clearly agreed to arbitrate, the parties could somehow

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

separate out a particular sub-dispute, in this case timeliness, and withhold determination of that issue from the arbitrator without having expressly provided for such a carve-out.  Mastrobuono, et al., clearly indicates such express provision would be required under the FAA.

Similarly, Bell observes that NGCA's cited First Options "itself focused on the absence of an agreement to arbitrate. First Options, 514 U.S. at 941, 944-46; Abram Landau, 123 F.3d at 73 (stating that First Options clarified 'the type of evidence needed to submit to arbitration a dispute regarding whether parties ever entered into a valid arbitration agreement at all')".

Ironically, even in NGCA's cited Bell, where the second agreement did not even have an arbitration provision, and arbitration of a dispute under that agreement was resisted, the FAA required the dispute nonetheless be arbitrated:

> [T]he Southern District of New York (Whitman Knapp, Senior Judge) den[ied Bell']s motion for a preliminary injunction to enjoin arbitration proceedings and grant[ed] the cross-motion of his former employer, defendant-appellee Cendant Corporation, to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4."

> Bell, at 564

> ========
> The parties' disagreement pertains to whether this language reaches all of Cendant's claims, which is a question of scope.FN2 Even if the existence of an arbitration agreement were in dispute, the Court would still be bound to analyze the parties' intent under the First Options standard, as First Options itself focused on the absence of an agreement to arbitrate. First Options, 514 U.S. at 941, 944-46, 115 S.Ct. 1920; Abram Landau, 123 F.3d at 73 (stating that First Options clarified "the type of evidence needed to submit to arbitration a dispute regarding whether parties ever entered into a valid arbitration agreement at all").

> Bell, at 567-68 (emphasis added).

Bell again quotes Moses H. Cone to make clear:

> Where the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that "any doubts ... be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. 927.

> Bell, at 566 (emphasis added).

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ⁿᵈ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

1   [As to ambiguities in context of the FAA, see also the US Supreme Court's comment in

2   <u>Mastrobuono</u> on the basic significance of arbitration clause draftsmanship where all doubts are

3   resolved in favor of arbitration:  NGCA is the party who chose New York law;  2/5/00 handwritten

4   note of NGCA's counsel Susan Borke, which may be separately submitted in this matter.]

5

6       In our case, the reservation of the "scope" of issues to the arbitrator is even more clear by

7   virtue of the parties' intentions in their choice of AAA guidelines, which expressly reserve such

8   "scope" to the arbitrator (along with even greater decision powers); that is, the parties intended to

9   allow the arbitrator to decide all claims that might be brought (a question of "scope", not of

10  "arbitrability", according to <u>Bell</u>, at 567-568, citing <u>Moses</u>):

11

12      **R-7. Jurisdiction** (a) The arbitrator shall have the power to rule on his or her own
        jurisdiction, including any objections with respect to the existence, <u>scope</u> or validity of the
13      arbitration agreement.

14      (b) The arbitrator shall have the power to determine the existence or validity of a contract
        of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an
15      agreement independent of the other terms of the contract. A decision by the arbitrator that
        the contract is null and void shall not for that reason alone render invalid the arbitration
16      clause.

17      (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim
        or counterclaim no later than the filing of the answering statement to the claim or
18      counterclaim that gives rise to the objection. The arbitrator may rule on such objections as
        a preliminary matter or as part of the final award.
19
        Rule R-7, AAA Commercial Arbitration Rules and Mediation Procedures, Amended and
20      Effective September 15, 2005 , Web 2.2.07, <u>www.adr.org</u> (emphasis added).

21

22      NGCA's cited <u>First Options of Chicago, Inc. v. Kaplan</u> (1995) 514 U.S. 938, actually makes

23  the same point as PPGI and the cases PPGI cites:

24      [T]he law treats silence or ambiguity about the question "who (primarily) should decide
        <u>arbitrability</u>" differently from the way it treats silence or ambiguity about the question
25      "whether a particular merits-related dispute is arbitrable because it is within the <u>scope</u> of a
        valid arbitration agreement"-- for in respect to this latter question the law reverses the
26      presumption. See <u>Mitsubishi Motors</u>, supra, at 626, 105 S.Ct., at 3353 (" '[A]ny doubts
        concerning the <u>scope</u> of arbitrable issues should be resolved in favor of arbitration' ")
27

28  **MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER
    FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

(quoting <u>Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); <u>Warrior & Gulf</u>, supra, at 582-583, 80 S.Ct., at 1352-1353.

<u>First Options</u>, at 944-946.

=================================================

<u>Moses H. Cone Memorial Hosp. v. Mercury Const.</u>["<u>Moses H. Cone</u>"] (1983) 460 U.S. 1, 24-25, with its clear language, bears quoting on point:

> 9 U.S.C. § 2… is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, <u>applicable to any arbitration agreement within the coverage of the Act</u>. In Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), for example, the parties had signed a contract containing an arbitration clause, but one party alleged that there had been fraud in the inducement of the entire contract (although the alleged fraud did not go to the arbitration clause in particular). The issue before us was whether the issue of fraud in the inducement was itself an arbitrable controversy. We held that the language and policies of the Act required the conclusion that the fraud issue was arbitrable. <u>Id.</u>, at 402-404, 87 S.Ct., at 1805-06. Although our holding in Prima Paint extended only to the specific issue presented, the courts of appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the **<u>scope</u>** of arbitrable issues should be resolved in favor of arbitration, <u>whether the problem at hand is the construction of the contract language itself or an allegation of **waiver, delay, or a like defense** to arbitrability</u>.

<u>Moses</u>, at 24-25 (emphasis added).

The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. [A]lthough enforcement of the Act is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate.

<u>Moses</u>, at 26.

Section 4 provides that a district court must enter an order to arbitrate "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." If either of these points is in issue, § 4 provides that "the court shall proceed summarily" to a trial on that point. Section 6 further provides that a request for relief under

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2^ND^ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL ARBITRATION ACT …**

1    either § 3 or § 4 is to be treated procedurally as a motion.

2    Moreover, the policy of the Arbitration Act requires a liberal reading of arbitration
     agreements, see infra, at 941. As a result, some issues that might be thought relevant to

3    arbitrability are themselves arbitrable-further speeding the procedure under §§ 3 and 4.
     See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18

4    L.Ed.2d 1270 (1967).

5    Moses, at 40-41.

6

7        In the allegations of this PPGI-NGCA case, neither **"the making of the agreement for**

8    arbitration or the failure to comply therewith is …in issue", and the court "must enter an order to

9    arbitrate 'upon being [so] satisfied' ". Id.

10       NGCA's position that its resort to the courts is not a "failure, neglect, or refusal … to

11   arbitrate under a written agreement for arbitration" under 9 USC section 4, because it has

12   provisionally entered into the AAA proceedings, is to call a thorn a rose:

13   The clear Congressional intent trumpeted by Moses H. Cone, "to move the parties to an arbitrable

14   dispute out of court and into arbitration as quickly and easily as possible [by] an expeditious and

15   summary hearing, with only restricted inquiry into factual issues", quoted at the beginning of this

16   memorandum, surely does not contemplate or countenance such an expensive and time-consuming

17   detour, no matter how 'provisional', where the parties contracted for arbitration.  By any other

18   name, being anything less than an unqualified participation in arbitration, NGCA's course of

19   conduct qualifies as a "failure, neglect, or refusal … to arbitrate under a written agreement for

20   arbitration" under 9 USC section 4".

21

22

23

24

25

26

27

28   **MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER
     FEDERAL  ARBITRATION ACT …**

LAW OFFICES OF JOHN F.I. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

# III.  STATUTE OF LIMITATIONS: MERITS OF FOUR DEFENSES (TO BE FURTHER BRIEFED TO THE ARBITRATOR, OR THE COURT AFTER THE FAA THRESHOLD HEARING, SHOULD THE COURT SOMEHOW FIND THE FAA DOES NOT REQUIRE REDIRECTION OF THIS ENTIRE MATTER TO THE ARBITRATOR).

Especially under the Federal Arbitration Act (as well as outside the FAA), any of the following four bases independently defeat any statute of limitations defense in this case:

**1.  PPGI's original 10'03 notice of intent to arbitrate (contained in NGCA's moving papers) was timely under California law as to all causes of action, even based on NGCA's recitation of a 10/21/01 accrual for breach of contract.**

Additionally, the  New York courts have made very clear that under its borrowing statute, New York also borrows all tollings and extensions of the foreign jurisdiction's statute of limitation procedure.  California has two such applicable tollings or extensions, described in 2 and 3 below.

**2.  New York's 6-year contract statute applies because California's 4-year statute of limitations to petition to compel arbitration** *commencing from the date of defendant's refusal to arbitrate.*

Further, however, once PPGI's  notice was sent under the express terms of the parties' agreement, the  MOU (contained in NGCA's moving papers), section 21, and NGCA failed, neglected or refused to arbitrate as set forth in PPGI's Plaintiff's Notice of Intent to

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

1  Arbitrate/Amended Claim (contained in NGCA's moving papers), California procedure also

2  dictates that the plaintiff then has a 4-year statute of limitations to petition to compel arbitration

3  *commencing from the date of defendant's refusal to arbitrate.*  This would be, at the earliest,

4  shortly after PPGI's 10'03 notice of intent to arbitrate, and arguably, though not necessary for

5  PPGI, in 11'04 after PPGI supplied NGCA with additional data and NGCA declined to arbitrate,

6  or even later in 12'05 when PPGI attempted further prompting by requesting participation in the

7  mutual selection of arbitrators from the group of candidates PPGI supplied in writing to NGCA.

8

9      As to the accrual date, <u>Spear v California State Auto. Assn</u> (1992) 2 C4th 1035, holds that

10  where a contract calling for arbitration does not have its own internal time limitation, the statute of

11  limitations is four years from the date a party refuses to arbitrate following a notice of intent to

12  arbitrate under the contract; see also <u>Meyer v Carnow</u> (1986) 185 CA3d 169,173, 77 ALR4th

13  1071.  See also, further, 4 below as to the calculation of that accrual date.  All claim categories:

14  breach of contract (reasonable/best efforts), breach of the covenant of good faith and fair dealing,

15  fraud, and unjust enrichment, have the same accrual date, <u>Carnow</u> and federal law (below at 4) to

16  the same effect, because those claims and any and all remedies are for the arbitrator under the

17  breached contract to arbitrate];

18

19  **3.  California Code of Civil Procedure ["CCP"] section 351, as applied.**

20

21      CCP 351 independently tolls the statute (were any tolling necessary, in light of 1 and 2

22  above and 4 below) due to NGCA's absence from the jurisdiction.  It is clear all tollings and

23  extensions of the foreign jurisdiction must also be imported; see <u>Childs v Brandon</u>, 471 NYS 40,

24  41-42, and New York cases there cited: applying foreign state's absent-defendant tolling provision

25  to preclude a time limitation defense under CPLR 202].

26      See also <u>Paver & Wildfoerster v Catholic High School Assn</u>., 382 NYS2d 22, 27,

27  bolstering these analyses generally.

28  **MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

Thus, as a fully independent basis for meeting the NY borrowing statute, Calif. CCP 351 provides the statute is tolled as to an out-of-state defendant until the defendant "returns" to Calif. [while this would on its face seem to imply a requirement that the defendant was once in California and left -- the statute does not expressly say such, and case law emphatically does not require such.  E.g., Kohan v Cohan (1988) 204 CA3d 915.].

NGCA is still out of the jurisdiction, ergo the statute is still tolled, because California has and has never had personal jurisdiction over NGCA. [Amenability to service is deemed irrelevant to the statute of limitations tolling; it is a factor in California's dismissal statutes in a lawsuit service-of-summons context, though even there it is of no moment because the dismissal is without prejudice, and the statute of limitations being still tolled as to the out-of-state defendant, the plaintiff merely re-files.]

(California courts have held that any challenge under the commerce clause is resolved under an as-applied constitutional analysis.  E.g., Mounts v Uyeda (1991) 227 CA3d 111, 121-122.  Accord, Bendix Autolite v Midwesco (1988) 486 US 888. *)

---

*  Buttressing the illustration that CCP 351 does not burden [much less unduly burden] interstate commerce in this case, below is a list of the U.S. states with a 6-yr-or-greater statute of limitation for breach of written contract:

6 yrs [20 states]::  AL,AZ,CT,GA,HI,ME,MA,Mich,Minn,NV,NJ,NM,NY,ND, OR,SD,TN,UT,WA,WI
8 yrs [1 state]:: Mont

10 yrs [7 states]::  IL,IN,IA,LA,MO,RI,WY [also in Ont., Canada, b/t/w]

15 yrs [2 states]:: KY,OH

Source: Fair Debt Collection.com

Since under constitutional 'as applied' analysis in our case, any resort to CCP 351 could at most expose NGCA to a 6-year statute of limitations [because under the MOU, N.Y. law applied with its borrowing statute and CCP 351 would leave New York's 6-year statute applicable to NGCA], any putative increase from California's 4-year to New York's 6-year statute would only result in NGCA's exposure to what at least 60% of the states routinely regulate commerce with.

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL ARBITRATION ACT ...**

**4.  Under the FAA, causes of action accrue only upon the refusal of a party to arbitrate.**

In addition to our points in 1 -3 above,  we add a fourth, even more fundamental point on the statute of limitations, which again is independently effective:

Under the FAA, causes of action under a written agreement containing an arbitration clause with no internal deadline of its own, accrue only upon the refusal of a party to arbitrate.  <u>Reconstruction Finance v Harrisons & Crosfield</u>, 204 F2d 366, 369 et passim.

Thus, according to PPGI's Plaintiff's Notice of Intent to Arbitrate/Amended Claim (contained in NGCA's moving papers), the causes of action in PPGI's case only arose at the earliest when NGCA counsel Emma Moloney on November 11, 2003 in writing refused to arbitrate [a "failure, neglect, or refusal" under FAA section 4] in response to PPGI's request to arbitrate; the nature of NGCA's refusal was irrespective of the form or contents of our request, and so at least an anticipatory breach of its agreement to arbitrate regardless of the form of our request.

Similarly, NGCA also one year later, in November 2004, in writing continued its failure to arbitrate, and refused subsequent written prompting requests made by PPGI counsel.  NGCA by its recent petition has refused an unqualified participation in the arbitration process yet again, requiring PPGI's cross-petition to compel arbitration.

All matters of timeliness, laches, waiver, estoppel and the like, like all other disputes between the parties, are for an arbitrator's determination.

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA  90401
310/393-3077

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

1

**CONCLUSION**

2

3          Respondent respectfully requests all claims be referred to the arbitrator forthwith, pursuant

4    to the Federal Arbitration Act and the parties' agreement to arbitrate.

5

6    DATED: 7/10/07                    LAW OFFICES OF JOHN F. L. HEBB,
                                       LAW OFFICES OF ROBERT H. POWSNER, and
7                                      LAW OFFICES OF AVRUM J. ROSEN

8

9
                                       By:_____
10                                     FRED S. KANTROW
                                       Attorneys for Respondent [Plaintiff in
11                                     Arbitration], and Cross-Petitioner PAC PACIFIC GROUP
                                       INT'L, INC. OF USA ("PPGI")
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    **MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER
      FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

PROOF OF SERVICE

(CCP 1013a, 2015.5, et al.)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am a resident of/employed in the aforesaid county, State of California; I am over the age of eighteen years and not a party to the within action; my business address is: 1541 Ocean Avenue, Ste. 200, Santa Monica, CA 90401-2100.

    On the below date, I served the foregoing

**MEMORANDUM OF LAW**

**IN OPPOSITION TO**

**1. PETITION TO STAY ARBITRATION;**

**AND IN SUPPORT OF**

**2. CROSS-PETITION TO COMPEL ARBITRATION; AND**

**3. REQUEST FOR THRESHOLD HEARING**

**ALL UNDER THE FEDERAL ARBITRATION ACT, 9 USC 1, et seq.**

on the interested parties in this action by (unless otherwise specified below) placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail in Los Angeles County, California, addressed as follows:

VIA EMAIL

Matthew Solum
Carl D. LeSueur
KIRKLAND & ELLIS LLP
Citigroup Center, 153 East 53rd Street
New York, New York 10022-4675
212-446-6460
212-446-4781
212-446-4800 pbx
Facsimile: 212-446-4900

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL  ARBITRATION ACT ...**

LAW OFFICES OF JOHN F.I. HEBB
1541 OCEAN AVENUE, 2ND FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

*msolum@kirkland.com, clesuer@kirkland.com, apaul@kirkland.com*
Attorneys for Petitioner [Defendant in Arbitration] NGC NETWORK ASIA, LLC ["NGCA"]

I declare, under penalty of perjury under the laws of the State of New York and California, that the foregoing is true and correct.

7/10/07 _____          Signature of Declarant

LAW OFFICES OF JOHN F.L. HEBB
1541 OCEAN AVENUE, 2ᴺᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
310/393-3077

**MEMORANDUM OF LAW IN OPPOSITION [ETC.], AND IN SUPPORT [ETC.] UNDER FEDERAL ARBITRATION ACT ...**

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.