UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

NGC NETWORK ASIA, LLC            :

        Petitioner,            :         07 CV 2855 (PAC)

                                        :         ORDER

PAC PACIFIC GROUP INT'L,
                                        :

        Respondent.
                                        :
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

NGC Network Asia, LLC ("NGC") filed this Petition to Stay Arbitration in New York County Supreme Court, on March 21, 2007, and Respondent, PAC Pacific Group International, Inc. of USA, ("PPGI"), removed the Petition to this Court.

PPGI opposes the stay and cross-moves to compel arbitration. PPGI contends that pursuant to the agreement at issue, the parties agreed to submit all issues, including issues of arbitrability to the arbitrator.

## I. Arbitrability

The arbitration clause at issue is found in ¶ 19 of the agreement,[1] and provides:

> In the event of a dispute concerning advertising and/or sponsorship for Programs pursuant to this MOU, such a dispute will be resolved by arbitration in New York, New York before a single retired judge or attorney with at least 10 years experience in the entertainment industry, in accordance with the laws of the State of New York, United States of America, and with the then existing rules for Commercial Arbitration of the American Arbitration Association. . . . The Parties intend either such arbitration to be valid, enforceable, irrevocable, and construed as broadly as possible.

---

[1] The parties' agreement is attached as Exhibit A to Mr. Lesueur's Affidavit in Support of the Petition to Stay Arbitration.

1

The court must deny the stay either (1) if it concludes that the arbitrability of the claims should itself be decided by an arbitrator, or (2) if it concludes that arbitrability is a question for the court to decide, and that the claims are indeed subject to arbitration under the agreement. See JSC Surgutneftegaz v. President and Fellows of Harvard Coll., 167 Fed. Appx. 266, 268 (2d Cir. 2006). With respect to the first question, courts refer the issue of arbitrability to an arbitrator only if "there is 'clear and unmistakable evidence' from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)).

The most reasonable reading of the language that "such a dispute will be resolved by arbitration in New York, New York . . . in accordance with the laws of the State of New York, United States of America, and with the then existing rules for Commercial Arbitration of the American Arbitration Association" is that the first portion of this sentence is a choice-of-law provision selecting New York substantive law, and the latter portion, beginning with "and with the then existing rules" is an enforcement provision selecting the AAA rules to govern the arbitration procedure. The mere inclusion of a choice-of-law provision in an arbitration provision does not thereby incorporate state arbitration law. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 60-64 (1995) ("[T]he best way to harmonize the choice-of-law provision with the [enforcement] provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision

2

covers the rights and duties of the parties, while the [enforcement] provision covers arbitration.").

The Court acknowledges that this sentence has more than one plausible interpretation when read in isolation, which is evidenced by the parties' differing interpretations. However, when the entire arbitration clause is read as a whole, as it should be, see Mastrobuono, 514 U.S. at 58-59, it is clear that the parties intended that all issues be submitted to the arbitrator. The language in the penultimate sentence, which provides that "[t]he Parties intend either such arbitration to be valid, enforceable, irrevocable, and construed as broadly as possible," is sweepingly broad and clearly evinces an intent to have the question of arbitrability decided by an arbitrator. See Bell v. Cendant Corp., 293 F.3d 563, 568 (2d Cir. 2002); White v. Kampner, 641 A.2d 1381 (1994) (stating that broad language in an arbitration clause "generally grants jurisdiction to the arbitrator to determine the issue of arbitrability"); PaineWebber, 81 F.3d at 1199-1200 ("The parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues (with or without specific reference to timeliness) for resolution by the courts . . . no draftsman seeking a six-year limitation on the scope of arbitrability would craft this language to accomplish that objective. If the [respondent's] claim is untimely, [petitioner's] remedy is to defend the arbitration action on timeliness grounds, not to enjoin arbitration altogether."); Shaw Group Inc. v. Triplefine Intern. Corp., 322 F.3d 115, 120 (2d Cir. 2003) ("Nothing in this boilerplate language, whether read together or separately, so much as hints at an intent to constrain the broad powers conferred on the arbitrator to resolve "all disputes" between the parties."); Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 47 (1997) (stating that

"[a] boilerplate choice of law clause does not necessarily signify the parties' acceptance of limitations imposed by New York law with respect to contractually conferred power on an arbitrator to determine all issues, including arbitrability").

The intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the AAA that empower the arbitrator to determine issues of arbitrability. See JSC Surgutneftegaz, 167 Fed. Appx. at 268 (citing Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005)).

Consequently, under the terms of the agreement, the parties have agreed to submit all issues, including the issue of the timeliness of claims, to the arbitrator, and the Court will not intrude upon that agreement.

## II. Petition to Compel Arbitration

Relief under 9 U.S.C. § 4 to compel arbitration is not appropriate at this point as PPGI has not been aggrieved by the refusal of another party to arbitrate. See Jacobs v. USA Track & Field, 374 F.3d 85, 89 (2d Cir. 2004). Accordingly, an order compelling arbitration is denied as premature.

## CONCLUSION

Both the Petition to Stay and the Petition to Compel Arbitration are DENIED. The Clerk of Court is ORDERED to close out this case.

Dated: New York, New York
July 31, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

4